USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-30-19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

ROBERT G. LOPEZ,

               Plaintiff,

  -against-

BONANZA.COM, INC., ET AL.,

               Defendants.

------------------------------------x

17 Civ. 8493 (LAP)

MEMORANDUM AND ORDER

LORETTA A. PRESKA, Senior United States District Judge:

    Pro se plaintiff Robert G. Lopez ("Lopez" or "Plaintiff") brings this action alleging federal and state claims, including trademark infringement, unfair competition and false designation of origin, copyright infringement, and unjust enrichment. (See Fourth Amended Complaint ("FAC"), dated July 6, 2018 [dkt. no. 214], ¶¶ 364-85.)  Before the Court are GoDaddy.com, LLC ("GoDaddy"), Shopify (USA) Inc. ("Shopify"), Microsoft Corporation ("Microsoft"), Sean T. Broihier ("Broihier"), Pixels.com, LLC d/b/a Fine Art America and www.fineartamerica.com ("Pixels"), Hostway Corporation ("Hostway"), Acquia, Inc. ("Acquia"), Poshmark, Inc. ("Poshmark"), Levi Strauss & Co. ("Levi Strauss"), Express Fashion Operations, LLC ("Express"), BONANZA.COM, INC., ("Bonanza"), Laura Sumampow Lopez ("Sumampow Lopez"), and LES Strong NYC, Inc.'s ("LES Strong") (collectively, the "Moving

Defendants")[1] motions to dismiss and motions for judgment on the pleadings.  (See Defendant GoDaddy.com, LLC's Notice of Motion and Motion to Dismiss ("GoDaddy's Motion"), dated July 20, 2018 [dkt. no. 224]; Defendant Shopify (USA) Inc.'s Motion to Dismiss Robert G. Lopez's Fourth Amended Complaint Pursuant to FED. R. CIV. PROC. Rules 12(b)(2), 12(b)(3), and 12(b)(6) ("Shopify's Motion"), dated July 20, 2018 [dkt. no. 228]; Defendant Microsoft Corporation's Notice of Motion and Motion to Dismiss ("Microsoft's Motion"), dated July 24, 2018 [dkt. no. 236]; Defendant Sean T. Broihier's Notice of Motion and Motion to Dismiss Fourth Amended Complaint ("Broihier's Motion"), dated July 27, 2018 [dkt. no. 242]; Defendant Pixels.com, LLC d/b/a Fine Art America and www.fineartamerica.com Notice of Motion and Motion to Dismiss Fourth Amended Complaint ("Pixels' Motion"), dated July 27, 2018 [dkt. no. 244]; Defendant Hostway Corporation's Notice of Motion to Dismiss the Fourth Amended Complaint ("Hostway's Motion"), dated Aug. 13, 2018 [dkt. no. 261]; Defendant Acquia Inc.'s Notice of Motion to Dismiss the Fourth Amended Complaint Pursuant to Rule 12(c) ("Acquia's

---

[1] The Court applauds those Moving Defendants, like Hostway, that incorporated by reference the legal arguments of other Moving Defendants.  The Court is dismayed, however, that all Moving Defendants did not coordinate and submit joint briefing -- which assuredly would have saved the Court valuable judicial time and resources and would have spared the environment many trees.

Motion"), dated Sept. 6, 2018 [dkt. no. 305]; Defendant Poshmark Inc.'s Motion to Dismiss Plaintiff's Fourth Amended Complaint ("Poshmark's Motion"), dated Sept. 25, 2018 [dkt. no. 333]; Defendant Levi Strauss & Co.'s Notice of Motion to Dismiss ("Levi Strauss' Motion"), dated Sept. 25, 2018 [dkt. no. 336]; Express Fashion Operations, LLC's Motion to Dismiss ("Express' Motion"), dated Sept. 27, 2018 [dkt. no. 341]; Notice of Motion ("Bonanza's Motion"), dated Oct. 3, 2018 [dkt. no. 350]; Defendants Laura Sumampow Lopez and LES Strong NYC, Inc.'s Notice of Motion and Motion to Dismiss ("Sumampow Lopez and LES Strong's Motion"), dated Feb. 28, 2019 [dkt. no. 387].)

For the following reasons, GoDaddy's Motion [dkt. no. 224], Shopify's Motion [dkt. no. 228], Microsoft's Motion [dkt. no. 236], Broihier's Motion [dkt. no. 242], Pixels' Motion [dkt. no. 244], Hostway's Motion [dkt. no. 261], Acquia's Motion [dkt. no. 305], Poshmark's Motion [dkt. no. 333], Levi Strauss' Motion [dkt. no. 336], Express' Motion [dkt. no. 341], Bonanza's Motion [dkt. no. 350], Sumampow Lopez and LES Strong's Motion [dkt. no. 387] are granted.

## I. BACKGROUND[2]

According to the FAC, Plaintiff operates a business under the trade name "L.E.S. Clothing Co.," through which he alleges that he sells various items of clothing under the brand names "Lower East Side" and "LES NYC." (FAC ¶¶ 1, 42-43.) Plaintiff alleges that he also uses the designations "LES," "LOYALTY EQUALS STRENGTH," and "THE LOWER" in connection with his sales of various clothing items. (Id. ¶¶ 43-44.) Plaintiff alleges that he sells his branded clothing online at www.lesclothing.com, in several retail locations, and previously in a flagship store in New York City. (Id. ¶ 46.) Plaintiff allegedly owns New York state registrations for the trademark LOWER EAST SIDE and a federal registration for the trademark LES NYC for use with clothing, such as t-shirts, hooded sweatshirts, hats, and caps (collectively referred to herein as Plaintiff's "trademarks" or "marks"). (Id. ¶¶ 58-59.) Plaintiff further alleges that he owns a copyright in a registered work known as the "Trust No One T-Shirt Design" (referred to herein as the "Copyright"). (Id. ¶ 76.) The Copyright includes the words "Trust No One" and depicts an image best described as two hands,

---

[2] "The following facts are taken from the operative complaint and are presumed true for the purposes of this motion." Lopez v. BigCommerce, Inc., No. 16-CV-8970 (JPO), 2017 WL 3278932, at *1 (S.D.N.Y. Aug. 1, 2017).

in the shape of handguns, shaking, with both index fingers resting on the two triggers.   (Id. ¶ 74.)

This action began on November 2, 2017, when Plaintiff filed his Complaint, dated Nov. 2, 2017 [dkt. no. 1].  Thereafter, Plaintiff filed a First Amended Complaint, dated Dec. 27, 2017 [dkt. no. 39], Second Amended Complaint, dated Jan. 19, 2018 [dkt. no. 65], and Third Amended Complaint, dated Feb. 23, 2018 [dkt. no. 90].

On April 27, 2018, Plaintiff requested permission to file the FAC, (Letter, dated Apr. 27, 2018 [dkt. no. 175], at 2), which the Court granted on May 15, 2018, (see Order, dated May 15, 2018 [dkt. no. 183], at 1).  On July 6, 2018, Lopez filed the FAC.  In its Order accepting the FAC, the Court stated that it would not permit any further amendments.[3]  (Memo Endorsement ("July 30, 2018 Order"), dated July 30, 2018 [dkt. no. 246], at

---

[3] To the extent any Moving Defendants argue that the Court should not grant Plaintiff leave to amend the FAC, (see, e.g., Defendant Shopify (USA) Inc.'s Motion to Dismiss Robert G. Lopez's Fourth Amended Complaint Pursuant to Fed. R. Civ. Proc. Rules 12(b)(2), 12(b)(3), and 12(b)(6), dated July 20, 2018 [dkt. no. 229], at 20), their arguments are moot in light of the Court's July 30, 2018 Order.  To the extent that any Moving Defendants request that the FAC be dismissed with prejudice, (see, e.g., Brief in Support of Poshmark Inc.'s Motion to Dismiss Fourth Amended Complaint Pursuant to FED. R. CIV. P. 12(b)(6), dated Sept. 25, 2018 [dkt. no. 335], at 12-13), their requests are granted, as set forth in the Conclusion.  See Section IV, infra.

1.)  The FAC's caption names 37 of Defendants.[4]

According to the FAC, Microsoft, Hostway, GoDaddy, and Acquia (four "web hosting compan[ies]", (FAC ¶¶ 149, 161, 182, 299)), Bonanza, Poshmark, and Shopify (three "e-commerce" businesses/vendors, (id. ¶¶ 68, 89, 173)), Pixels (an "art marketplace and print-on-demand technology company," (id. ¶ 116)), Broihier (Pixels' "founder, owner and executive Member," (id. ¶ 131)), Express and Levi Strauss (two "clothing retail compan[ies]," (FAC ¶¶ 242, 254)), LES Strong (a "small local business," (id. ¶ 330)), and Sumampow Lopez (LES Strong's "found[er] and operat[or]," (id.)), "infring[ed] . . . Plaintiff's 'ownership' and exclusive 'use' rights in the marks . . . in conjunction with clothing and related goods," which resulted in their "unjust enrichment," (id. ¶ 1).  Plaintiff also alleges that Bonanza infringed upon his Copyright.  (Id. ¶ 79.)

In the FAC, Plaintiff asserts claims for trademark infringement under the Lanham Act (15 U.S.C. § 1114) against all

---

[4] The Court only addresses the Moving Defendants' motions in this Order.  However, the Court mentions other Defendants named in the FAC in this Order -- including, Spirit Fund, LLC ("Spirit Fund"), Digital Fortress, Inc. ("Digital Fortress"), Amazon.com, LLC ("Amazon"), and Tierpoint, LLC ("Tierpoint") -- because some of Plaintiff's allegations against certain Moving Defendants involve or relate to these other Defendants.

Moving Defendants (Count I),[5] unfair competition and false designation of origin under the Lanham Act (15 U.S.C. § 1125(a)) against all Moving Defendants (Count II), New York common law trademark infringement and unfair competition against all Moving Defendants (Count III), copyright infringement under the Copyright Act (17 U.S.C. § 101 et seq.) against Bonanza only[6] (Count IV), and unjust enrichment against all Moving Defendants[7] (Count V).  (FAC ¶¶ 364-85.)

GoDaddy moves to dismiss the FAC pursuant to Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6).  (GoDaddy's Motion at 1.)

Shopify moves to dismiss the FAC pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6).  (Shopify's

---

[5] Plaintiff's Count I also cites to §§ 1115 and 1116 of the Lanham Act.  (FAC ¶¶ 364-65.)  However, neither of these sections provide causes of action.  See Franklin v. X Gear 101, LLC, No. 17 Civ. 6452(GBD)(GWG), 2018 WL 3528731, at *8 n.5 (S.D.N.Y. July 23, 2018), report and recommendation adopted, No. 17 Civ. 6452(GBD)(GWG), 2018 WL 4103492 (S.D.N.Y. Aug. 28, 2018).

[6] Plaintiff also brings this claim against three other Defendants named in the FAC:  Digital Fortress, Amazon, and Tierpoint. However, because they are not Moving Defendants, Plaintiff's copyright infringement claims against Digital Fortress, Amazon, and Tierpoint are not addressed in this Order.

[7] Plaintiff brings Counts I, II, III, and V against all "Defendants" named in the FAC.  However, because the Court is only addressing the Moving Defendants' motions in this Order, Plaintiff's claims against the other Defendants named in the FAC as to these counts are not addressed in this Order.

Motion at 2.)

Microsoft moves to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Microsoft's Motion at 2.)

Broihier moves to dismiss the FAC pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).  (Broihier's Motion at 1.)

Pixels moves to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6).[8]  (Pixels' Motion at 1.)

Hostway moves to dismiss the FAC under Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6).  (Hostway's Motion at 1.)

Acquia moves to dismiss[9] the FAC pursuant to Federal Rules of Civil Procedure 8(a)(2) and 12(c).[10]  (Acquia's Motion at 1.)

---

[8] Pixels requests that the Court take judicial notice of "certain pages found at www.fineartamerica.com . . . under Fed. R. Evid. 201."  (Pixels' Motion at 1.)  The Court need not take judicial notice of these pages in order to grant Pixels' Motion under Rule 12(b)(6).  See Section III.A, infra.  Accordingly, Pixel's request is denied as moot.

[9] Acquia also filed an answer to Plaintiff's FAC.  (Defendant Acquia's Answer to Plaintiff's Fourth Amended Complaint ("Acquia's Answer"), dated Aug. 13, 2018 [dkt. no. 254].)  Because the Court dismisses Plaintiff's claims against Acquia in their entirety, see Section III.B, infra, Acquia's Answer, and any memoranda of law filed in support of or in opposition to it, are rendered moot.

[10] Acquia requests that the Court issue an "Order dismissing Plaintiff's Fourth Amended Complaint (Dkt. No. 214) against Acquia with prejudice, under Rule[ ] . . . 12(c)."  (Acquia's Motion at 1.)  In so requesting, Acquia is seeking a motion for judgment on the pleadings.  "The Court applies the same standard of review to a Rule 12(c) motion as it does to a (continued)

Poshmark moves to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6).   (Poshmark's Motion at 1.)

Levi Strauss moves pursuant to Federal Rules of Civil Procedures 12(b)(6), 12(e), 20, and 21 to dismiss this action or alternatively for a more definite statement and to sever.   (Levi Strauss' Motion at 2.)

Express moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss this action, or alternatively for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e), or in the alternative, Defendant requests permission to move for judgment on the pleadings.[11]   (Express' Motion at 2.)

Bonanza moves[12] pursuant to Federal Rule of Civil Procedure

---

(continued) motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6)."   Felder v. United States Tennis Ass'n Inc., No. 17 Civ. 5045 (ER), 2018 WL 5621484, at *2 (S.D.N.Y. Oct. 30, 2018).   The Rule 12(c) standard is more fully explained in Section II, infra.

[11] Because the Court dismisses Plaintiff's claims against Express in their entirety, see Section III.A, infra, Express' request for permission to move for judgment on the pleadings is denied as moot.

[12] Bonanza also filed an answer to Plaintiff's FAC and brought counterclaims against Plaintiff.   (Answer to Fourth Amended Complaint with Affirmative Defenses and Counterclaims ("Bonanza's Answer and Counterclaims"), dated July 20, 2018 [dkt. no. 223].)   Bonanza seeks various forms of relief, including attorneys' fees and costs under 15 U.S.C. § 1117 and 17 U.S.C. § 505 and "all prejudgment and postjudgment interest allowed by law."   (Id. at 48.)   15 U.S.C. § 1117(a) "gives the court power to award attorneys' fees to parties prevailing under the Lanham Act 'in exceptional cases.'"   Hoepker v. Kruger, 200 F. Supp. 2d 340, 355 (S.D.N.Y. 2002).   "The decision (continued)

12(c) "for judgment on the pleadings dismissing the [FAC]."

(Bonanza's Motion at 1.)

Sumampow Lopez and LES Strong move to dismiss the FAC

pursuant to Federal Rules of Civil Procedure Rule 8(a)(2) and

---

(continued) whether or not to award such fees rests within the broad discretion of the court, but awards under this section are generally limited to those cases involving bad faith, malice, willfulness or fraud."  Id.  "The mere fact that an action is dismissed against a plaintiff does not suggest bad faith."  Jewelers Vigilance Comm., Inc. v. Vitale Inc., No. 90 Civ. 1476(MJL), 1997 WL 582823, at *5 (S.D.N.Y. Sept. 19, 1997). "Defendants are rarely awarded attorney's fees under Section 35."  Id.  This action "does not fall within those 'exceptional cases' that warrant an award of attorney fees to a prevailing Lanham Act defendant."  Id.  Accordingly, the Court "decline[s] to exercise [its] discretion in [Bonanza's] favor by awarding attorneys' fees" under 15 U.S.C. § 1117(a).  Hoepker, 200 F. Supp. 2d at 355.  "Section 505 of the Copyright Act provides that the Court, in its discretion, may award costs and attorneys' fees to a prevailing party in a copyright action."  Id. (citing 17 U.S.C. § 505).  "Factors that may be considered in determining whether to award fees include frivolousness, motivation, objective unreasonableness . . . and the need in particular circumstances to advance considerations of compensation and deterrence."  Id. (citations omitted). Considering these factors, the Court finds Plaintiff's claims, "while precluded by law under [the Court's] analysis, w[ere] neither frivolous nor objectively unreasonable."  Id. Accordingly, the Court "decline[s] to use [its] discretionary powers to award [Bonanza] attorneys' fees and costs under 17 U.S.C. § 505."  Id.  The Court necessarily declines to award Bonanza any pre- or post-judgment interest on any damages award because it denies Bonanza's requests for attorneys' fees or costs under both 15 U.S.C. § 1117 and 17 U.S.C. § 505. Finally, because the Court grants Bonanza's Motion, see Section III.B, infra, the Court need not reach Bonanza's remaining requested forms of relief -- which, in essence, ask the Court to enter judgment in Bonanza's favor.  (Bonanza's Answer and Counterclaims at 48.)  Accordingly, Bonanza's Counterclaims [dkt. no. 223] are denied.  Any memoranda of law filed in support of or in opposition to Bonanza's Answer and Counterclaims are rendered moot.

12(b)(6).[13]   (Sumampow Lopez and LES Strong's Motion at 1.)

GoDaddy, Shopify, Microsoft, Broihier, Pixels, Hostway, Poshmark, Levi Strauss, Express, Sumampow Lopez, and LES Strong (collectively, the "Rule 12(b)(6) Moving Defendants") move to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth below, <u>see</u> Section III.A, <u>infra</u>, the 12(b)(6) Moving Defendants' motions [dkt. nos. 224, 228, 236, 242, 244, 261, 333, 336, 341, 387] are granted under Rule 12(b)(6).

---

[13] In opposing Sumampow Lopez and LES Strong's Motion, Plaintiff "request[s] that this Court . . . impose Rule 11 Sanctions against attorney Abraham Lichy," Sumampow Lopez and LES Strong's counsel.  (Plaintiff's Memorandum of Law in Opposition of Defendants Laura Sumampow Lopez and LES Strong NYC's Motion to Dismiss Plaintiff's Fourth Amended Complaint, dated Aug. 27, 2018 [dkt. no. 283], at 16.)  Plaintiff's "request is procedurally improper, as [he] did not comply with the procedures set forth in Rule 11." <u>Schusterman v. Mazzone</u>, No. 19 Civ. 212(PAE), 2019 WL 2547142, at *5 (S.D.N.Y. June 19, 2019); <u>see</u> FED. R. CIV. P. 11(c)(2) ("A motion for sanctions must be made separately from any other motion. . . . The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."); <u>see also</u> <u>Banfield v. UHS Home Attendants, Inc.</u>, No. 96 CIV. 4850(JFK), 1997 WL 342422, at *3 (S.D.N.Y. June 23, 1997) ("Because Plaintiff failed to comply with . . . . Rule 11's procedural requirements in moving for sanctions against Defendants' counsel, the Court denies the motion without reaching its merits.").  Because "[a] statement in a party's brief requesting sanctions," as Plaintiff made here, "is not equivalent to a separately filed motion," <u>Ullman-Briggs, Inc. v. Deerfield Housewares, Inc.</u>, 100 F.3d 942, 943 (2d Cir. 1996), the Court denies Plaintiff's request for sanctions [dkt. no. 283].

Acquia and Bonzana (collectively, the "Rule 12(c) Moving Defendants") do not move to dismiss the FAC pursuant to Rule 12(b)(6); however, they both move to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(c).  For the reasons set forth below, see Section III.B, infra, the 12(c) Moving Defendants' motions [dkt. nos. 305, 350] are granted under Rule 12(c).[14]

---

[14] As outlined above, several of the Moving Defendants move to dismiss the FAC on alternate grounds, including, but not limited to, Rule 12(b)(2), (see, e.g., Broihier's Motion at 1), and Rule 12(b)(3), (see Shopify's Motion at 2).  Several Moving Defendants also move under other sections of the Federal Rules of Civil Procedure, seeking, among other things, a more definite statement under Rule 12(e).  (See, e.g., Express' Motion at 2). Furthermore, several Moving Defendants argue that certain legal doctrines bar Plaintiff's claims, including, but limited to, fair use, (see, e.g., Memorandum of Motion to Dismiss Claims Against Pixels.com, LLC, dated July 27, 2018 [dkt. no. 245], at 11), the statute of limitations, (see Memorandum of Law in Support of Express Fashion Operations LLC's Motion to Dismiss ("Express' Mem."), dated Sept. 27, 2018 [dkt. no. 342], at 9), res judicata, (see Laura Sumampow Lopez and LES Strong NYC, Inc.'s Memorandum in Support of Their Motion to Dismiss Pursuant to Rile 12(b)(6), dated Feb. 28, 2019 [dkt. no. 389], at 5), the Communications Decency Act, (see, e.g., Memorandum of Law in Support of Defendant Acquia Inc's Motion to Dismiss the Fourth Amended Complaint Pursuant to Rule 12(c) ("Acquia's Mem."), dated Sept. 6, 2018 [dkt. no. 306], at 2), and the Digital Millennium Copyright Act, (see Memorandum of Law in Support of Defendant BONANZA.COM, INC's Motion to Dismiss ("Bonanza's Mem."), dated Oct. 3, 2018 [dkt. no. 351], at 3) -- some of which are unique to individual Moving Defendants.  Because the Court dismisses Plaintiff's claims against the 12(b)(6) Moving Defendants on Rule 12(b)(6) grounds and Plaintiff's claims against the 12(c) Moving Defendants on Rule 12(c) grounds, the Court need not reach any of the alternate arguments and grounds for dismissal set forth by the Moving Defendants.  They are therefore all denied as moot.  See, e.g., Lipin v. Hunt, No. 14-CV-1081(RJS), 2015 WL 1344406, at *4 (continued)

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

A defendant may move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) where the plaintiff "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive such a motion, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Franklin, 2018 WL 3528731, at *3 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). As the Supreme Court stated in Iqbal,

---

(continued)(S.D.N.Y. Mar. 20, 2015) ("Because the Court dismisses [the pro se plaintiff's] case pursuant to [Rule] 12(b)(6), the Court need not address Defendants' alternative arguments" to dismiss pursuant to Rules "12(b)(2), (b)(3), and (b)(5)"); Leak v. Schriro, Nos. 11 Civ. 8023(PAE)(JCF), 12 Civ. 0618(PAE)(JCF), 2013 WL 1248620, at *1 (S.D.N.Y. Mar. 27, 2013) (noting, because the case was "resolv[ed] . . . based on [the pro se] plaintiffs' failure to state a claim, there [wa]s no need . . . to address [plaintiffs'] separate asserted deficiency . . . in plaintiffs' complaints which the defendants identify" and finding, "[o]n the contrary, the interest in judicial economy counsels against this Court's reaching this issue"); Bennerson v. City of New York, No. 03 Civ. 10182(RWS), 2004 WL 902166, at *5 (S.D.N.Y. Apr. 28, 2004) (holding, in pro se plaintiff case, "[s]ince the amended complaint [was] dismissed . . . pursuant to Rule 12(c)," defendants' "alternate grounds for dismissal under Rule 41(b), need not be reached"); Koar v. United States, No. 96 CIV. 5166 KMW, 1997 WL 1038181, at *2 (S.D.N.Y. Sept. 2, 1997) (dismissing pro se plaintiff's complaint for failure to state a claim and noting, "[i]n view of this finding, [the court] need not consider the other arguments raised by defendant," despite "allowing for the deference afforded pro se complaints").

[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

556 U.S. at 678 (internal quotation marks and citations omitted).

"[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted); see also Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1092 (2d Cir. 1995) (finding a court need not credit "[g]eneral, conclusory allegations . . . belied by more specific allegations of the complaint"). Therefore, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679; see also id. at 678 ("[A] complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" (quoting Twombly, 550 U.S. at 557)); Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) (noting a complaint will not suffice if it lacks factual allegations sufficient "to

14

give the defendant fair notice of what the claim is and the grounds upon which it rests").

"Pro se plaintiff filings are liberally construed, and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Franklin, 2018 WL 3528731, at *4 (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam)); see also Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (noting a review of a pro se complaint for sufficiency requires "'special solicitude,' interpreting the complaint to raise the 'strongest [claims] that [it] suggest[s]'") (citation omitted). "However, even the pleadings of pro se plaintiffs 'must contain factual allegations sufficient to raise a right to relief above the speculative level.'" Franklin, 2018 WL 3528731, at *4 (quoting Dawkins v. Gonyea, 646 F. Supp. 2d 594, 603 (S.D.N.Y. 2009)); see also Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a pro se case . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" nor may a court "invent factual allegations" a pro se plaintiff has not himself pled (citation omitted)).

"On a motion to dismiss for failure to state a claim" pursuant to Rule 12(b)(6), a court's "consideration is limited

to the factual allegations in [the complaint], which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff[ ] had knowledge and relied on in bringing suit." Franklin, 2018 WL 3528731, at *4 (quoting Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993)).  "[A] plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (emphasis in original).

## B. Federal Rule of Civil Procedure 12(c)

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, any party may request judgment on the pleadings "after the pleadings are closed --but early enough not to delay trial." FED. R. CIV. P. 12(c).  The standard for evaluating a Rule 12(c) motion is "the same standard applicable to dismissals pursuant to [Rule] 12(b)(6)." Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010) (citing Johnson v. Rowley, 569 F.3d 40, 43 (2d Cir. 2009) (per curiam)).  "To survive a Rule 12(c) motion, [a plaintiff's] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face." Id. (citations omitted). "In deciding a motion for judgment on the pleadings, a court may consider the pleadings and attached exhibits, statements or documents incorporated by reference, and matters subject to judicial notice." Merck & Co. v. Mediplan Health Consulting, Inc., 425 F. Supp. 2d 402, 410 (S.D.N.Y. 2006).

## III. DISCUSSION

### A. 12(b)(6) Moving Defendants' Motions

#### 1. Lanham Act Claims (Counts I and II)

In the FAC, Plaintiff asserts two Lanham Act claims against the 12(b)(6) Moving Defendants: trademark infringement under 15 U.S.C. § 1114 (Count I); and unfair competition and false designation of origin under 15 U.S.C. § 1125(a) (Count II). (FAC ¶¶ 364-70.) Plaintiff alleges that all of the 12(b)(6) Moving Defendants directly infringed his trademarks and certain 12(b)(6) Moving Defendants indirectly infringed his marks. The Court addresses each type of alleged infringement in turn.

##### i. Direct Trademark Infringement

"To prevail on a [direct] trademark infringement claim under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), or false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C.

§ 1125(a),[15] a plaintiff must first show that it owns a valid
mark entitled to protection under the statute[16] that the
defendant used in commerce, without the plaintiff's consent and
in connection with the sale or advertising of goods or
services." Merck & Co., 425 F. Supp. 2d at 410-11 (citing 1-800
Contacts, Inc. v. WhenU.com, Inc., 414 F.3d 400, 406-07 (2d Cir.
2005)). "The plaintiff must then show that the defendant's
use of the mark 'is likely to cause consumers confusion as to
the origin or sponsorship of the defendant's goods.'" Id.
(quoting Savin Corp. v. Savin Group, 391 F.3d 439, 456 (2d Cir.
2004)). "Because false designation and 'unfair competition
[claims] under Section 43(a) of the Lanham Act[, 15 U.S.C.
§ 1125], . . . require[ ] an identical test to that for
infringement' under § 1114(1)," the Court's "conclusions as to
'use in commerce'" for Plaintiff's § 1125(a) Lantham Act claims

---

[15] "Section 43(a) is a broad federal unfair competition provision
which protects unregistered trademarks similar to the way that
section 32(1) . . . protects registered marks." Chambers, 282
F.3d at 155. "Thus, trademark infringement is a narrower form
of unfair competition, and the same legal test applies with
respect to both." Merck & Co., 425 F. Supp. 2d at 410 n.7; see
also Moseley v. V. Secret Catalogue, Inc., 537 U.S. 418, 428
(2003) ("Traditional trademark infringement law is a part of the
broader law of unfair competition.").
[16] Several 12(b)(6) Moving Defendants argue that Plaintiff cannot
show he owns a valid trademark. (See, e.g., Express' Mem. at
11.) However, because the Court finds that none of the 12(b)(6)
Moving Defendants used his marks in commerce, the Court need not
resolve this issue. Therefore, for the sake of the foregoing
analysis, the Court assumes arguendo, without actually deciding,
that Plaintiff owns the marks.

(Count II) "appl[y] equally to" his § 1114 Lantham Act claims

(Count I).  Franklin, 2018 WL 3528731, at *10.

The Court of Appeals has explained that "'use,' 'in commerce,' and 'likelihood of confusion' [are] three distinct elements."  1-800 Contacts, 414 F.3d at 412.  "'[U]se' must be decided as a threshold matter because, while any number of activities may be 'in commerce' or create a likelihood of confusion, no such activity is actionable under the Lanham Act absent the 'use' of a trademark."  Id. (citation omitted).  "To show 'use,' a plaintiff must show with respect to the sale of goods that the defendant (1) 'placed [the mark] in any manner on the goods . . . and (2) the goods are sold or transported in commerce.'"  Franklin, 2018 WL 3528731, at *10 (quoting 15 U.S.C. § 1127).  "With respect to the sale of services, a plaintiff must show that the defendant 'used or displayed [the mark] in the sale or advertising of services and the services are rendered in commerce.'"  Id. (quoting 15 U.S.C. § 1127).

Plaintiff alleges that Microsoft, Hostway, and GoDaddy (three "web hosting compan[ies]," (FAC ¶¶ 149, 161, 182)), Poshmark and Shopify (two "e-commerce business[es]," (id. ¶¶ 89, 173)), Pixels (an "art marketplace and print-on-demand technology company," (id. ¶ 116)), and Broihier (Pixels' "founder, owner and executive Member," (id. ¶ 131))

(collectively, the "Online Platform 12(b)(6) Moving

Defendants"), directly infringed his marks, (see id. ¶¶ 89, 116-

20, 124, 131-32, 149, 151, 161, 163, 173, 175, 182, 184).

Plaintiff alleges that the remaining 12(b)(6) Moving Defendants

-- Express and Levi Strauss (two "clothing retail compan[ies]"

(FAC ¶¶ 242, 254)), LES Strong (a "small local business,"[17] (id.

¶ 330)), and Sumampow Lopez (LES Strong's "found[er] and

operat[or]," (id.)) (collectively, the "Retail 12(b)(6) Moving

Defendants") -- also directly infringed his trademarks, (see,

e.g., id. ¶¶ 242, 244-45, 248, 256-57, 260, 333).  The Court

disagrees; instead, because Plaintiff fails to plead that any of

the 12(b)(6) Moving Defendants "use[d]" Plaintiff's trademarks

"in commerce," Franklin, 2018 WL 3528731, at *10 (citation

omitted), the Court finds that Plaintiff fails to plead a claim

of direct trademark infringement against them.  The Court

addresses Plaintiff's allegations against the Online Platform

---

[17] While Plaintiff explicitly alleges that Express and Levi
Strauss are "clothing retail compan[ies]," (FAC ¶¶ 242, 254),
Plaintiff appears to describe LES Strong as such, (see, e.g.,
id. ¶ 331 ("LES Strong NYC is manufacturing, printing,
marketing, promoting, selling and offering for sale various t-
shirts, caps and other clothing items bearing Plaintiff's . . .
marks"); id. ¶ 336 ("LES STRONG NYC clothing . . . began in
2015")).  Accordingly, because it is clear that Plaintiff is not
alleging that LES Strong is a web hosting, e-commerce, or online
marketplace business like the Online Platform 12(b)(6) Moving
Defendants, the Court analyzes Plaintiff's allegations against
LES Strong and Sumampow Lopez together with his allegations
against Express and Levi Strauss.

12(b)(6) Moving Defendants and the Retail 12(b)(6) Moving
Defendants in turn.

### a. Online Platform 12(b)(6) Moving Defendants

Plaintiff alleges that Microsoft, Hostway, and GoDaddy
"provide[ ] web hosting and online retail store services via the
worldwide internet." (FAC ¶¶ 149, 161, 182.) According to
Plaintiff, "[u]nder [their] control and direction," Microsoft,
Hostway, and GoDaddy "provid[e] hosting, and online retail store
services to [websites] which provide[ ] the platform and ability
to purchase" clothing items "that infringe Plaintiff's" marks.
(Id.; see also id. ¶¶ 151, 163, 184 (alleging Microsoft,
Hostway, and GoDaddy are "using Plaintiff's . . . marks in
commerce in connection with the advertising, sale and offering
for sale of clothing items that violate Plaintiff's trademarks
by displaying and promoting products under Plaintiff's
trademarks from" www.spiritshop.com, www.fineartamerica.com, and
the www.cruvie.com, respectively).)

Similarly, Plaintiff alleges that Poshmark "provid[es] an
online store and platform to purchase t-shirts, hoodies and
other apparel and [is] displaying, publishing, exploiting,
marketing, promoting, selling and offering for sale t-shirts and
other clothing items in commerce under designs that infringe
Plaintiff's . . . trademarks from its website www.poshmark.com."

(Id. ¶ 89.)  Plaintiff alleges that Shopify "provides a platform
and online store to third party account users and is providing
hosting services and an online store to purchase t-shirts,
hoodies and other merchandise and [is] marketing, promoting,
selling and offering for sale via its account holders website
www.zeeshirtcollection.com clothing items promoted under" and
"that infringe[ ] Plaintiff's . . . trademarks." (Id. ¶¶ 173,
175.)

Comparably, Plaintiff alleges that Pixels is an "art
marketplace and print-on-demand technology company" where
"artists and photographers can upload their images[,] . . . set
their price for hundreds of different print-on-demand products
including t-shirts and then Pixels.com displays, promotes,
advertises, sells and offers for sale those products to a global
audience including online, mobile and real world buyers." (Id.
¶ 116.)  Plaintiff alleges Pixels is "using Plaintiff's
trademarks 'in commerce' in connection with the sale and
offering of clothing products for a profit" by "manufacturing,
printing, marketing, promoting, selling and offering for sale
apparel items including t-shirts and other similar clothing
items under Plaintiff's . . . marks on its website
www.fineartamerica.com." (Id. ¶ 118; see also id. ¶ 119
("Defendant Pixels.com is using Plaintiff's . . . mark in
commerce in connection with the sale and advertising of clothing

items without Plaintiff's consent."); id. ¶ 124 (alleging
Pixels' "use[ ]" of Plaintiff's "marks on its website display
associated with promoting the sale of various t-shirts offered
under plaintiff's trademarks on the www.fineartamerica.com
website" and "use[ ]" of Plaintiff's "marks on documents
associated with the tshirts i[t] sells under Plaintiff's
trademarks . . . are a 'use in commerce' of Plaintiff's
trademark").)  In addition, Plaintiff alleges that "Briohier[,]
in conjunction with Defendant Pixels.com, LLC[,] is using
Plaintiff's . . . marks in commerce to advertise, sell and offer
for sale clothing items under Plaintiff's trademarks without
Plaintiff's authorization or consent."[18]  (Id. ¶ 132.)

Plaintiff "does not contend that" any of the Online
Platform 12(b)(6) Moving Defendants "placed" Plaintiff's marks
"on any clothing or other goods" sold on their respective
websites, e-commerce platforms, or online marketplaces.
Franklin, 2018 WL 3528731, at *10.  The closest Plaintiff comes
to making such an allegation is claiming Pixels "manufactur[es]"

---

[18] In addition to "join[ing] in [Pixels' Motion] and
incorporat[ing] it" in his Memorandum in Support of Motion to
Dismiss Claims Against Sean T. Broihier ("Broihier's Mem."),
dated July 27, 2018 [dkt. no. 243]), Broihier argues that "New
York law forbids Plaintiff from piercing Pixels' corporate
veil."  (Broihier's Mem. at 10.)  Because the Court finds that
Plaintiff fails to allege Broihier's use of Plaintiff's
trademarks in commerce, and as such, he fails to allege Broihier
directly infringed his trademarks, the Court need not reach
Broihier's corporate veil argument.

and "print[s]" items that infringe his marks.   (FAC ¶ 118.)
However, it is the artists using Pixels' online marketplace, not
Pixels itself, that "place[ ]" the marks on the items, Franklin,
2018 WL 3528731, at *10; as Plaintiff himself alleges, Pixels
merely "fulfills . . . order[s] on behalf of the artists, taking
care of the printing, framing, matting, packaging, shipping,
collecting payments from the buyers, and sending profits to the
artists." (Id. ¶ 117.)   See GMA Accessories, Inc. v. BOP, LLC,
765 F. Supp. 2d 457, 463 (S.D.N.Y. 2011), aff'd sub nom. GMA
Accessories, Inc. v. Elec. Wonderland, Inc., 558 F. App'x 116
(2d Cir. 2014) (finding "no evidence that Electric Wonderland
placed the ['Charlotte Solnicki'] mark on any goods" where
Electric Wonderland "maintained samples in its showroom labeled
as 'Charlotte Solnicki'" but there was no "allegation that
Electric Wonderland actually performed the labeling").

Plaintiff also does not contend that the Online Platform
12(b)(6) Moving Defendants "sold [their] services by use of"
Plaintiff's marks or that they "used the mark[s] in connection
with selling or advertising [their] web hosting[, e-commerce, or
online] services." Franklin, 2018 WL 3528731, at *10.
"Moreover, it is apparent from the other allegations of the
[FAC][19] that it is [third parties]," namely users of the Online

---

[19] (See, e.g., FAC ¶ 175 (alleging this action is a "dispute
[concerning] a third party user of the Shopify (continued)

Platform 12(b)(6) Moving Defendants' respective services, "who allegedly 'used' [Paintiff's] trademark[s] in connection with the sale of goods—not [the Online Platform 12(b)(6) Moving Defendants]." Id.; see also Tiffany (NJ) Inc. v. eBay, Inc., 600 F.3d 93, 103 (2d Cir. 2010) (Tiffany II) (finding that the offering of counterfeit wares by users of its website was not a basis for a claim of direct trademark infringement against eBay); Sellify Inc. v. Amazon.com, Inc., No. 09 Civ. 10268(JSR), 2010 WL 4455830, at *2 (S.D.N.Y. Nov. 4, 2010) (finding, where "[t]he undisputed evidence shows that Cutting Edge, not Amazon, designed and purchased the ads at issue . . . Amazon cannot be subject to direct liability under the Lanham Act"); Gucci Am., Inc. v. Frontline Processing Corp., 721 F. Supp. 2d 228, 247 (S.D.N.Y. 2010) (finding "no indication" defendants "actually 'used the mark in commerce'" because "[k]nowledge alone of another party's sale of counterfeit or infringing items is insufficient to support direct liability, and there are otherwise no factual allegations that [defendants] themselves advertised or sold infringing goods").

Accordingly, because Plaintiff fails to allege that any of the Online Platform 12(b)(6) Moving Defendants "use[d]" his

_____

(continued) platform that is offering clothing items that infringes Plaintiff's . . . trademarks").)

trademarks "in commerce,"[20] Franklin, 2018 WL 3528731, at *10
(citation omitted) the Court finds Plaintiff fails to state
claims for direct trademark infringement against the Online
Platform 12(b)(6) Moving Defendants.

### b. Retail 12(b)(6) Moving Defendants

As a threshold matter, the Court addresses Express and Levi
Strauss' respective arguments that the Court should consider
Express' "Griffin Shirt," (Express' Mem. at 7), and Levi

---

[20] In addition to the specific allegations against individual
Online Platform 12(b)(6) Moving Defendants discussed above,
Plaintiff makes several generalized allegations against all
"Defendants" collectively without separately and specifically
identifying their individual alleged conduct.  (See, e.g., FAC
¶¶ 1, 361-75.)  These allegations do not contain any specific
facts to suggest that any individual Online Platform 12(b)(6)
Moving Defendant ever used any of Plaintiff's trademarks.  (Id.)
As such, no individual Online Platform 12(b)(6) Moving Defendant
had fair notice of how it allegedly harmed Plaintiff because it
was lumped together with other "Defendants" without any
distinction.  It is well established that general allegations
against all defendants cannot support liability against
individual defendants who are not alleged to have actually
engaged in the identified activity.  Twombly, 550 U.S. at 557;
Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001)
(affirming district court dismissal of complaint under Rule
12(b)(6) upon noting "a complaint [must] give each defendant
fair notice of what the plaintiff's claim is and the ground upon
which it rests") (internal quotation marks omitted); Ochre LLC
v. Rockwell Architecture Planning & Design, P.C., No. 12 Civ.
2837(KBF), 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3, 2012)
("Where a complaint names multiple defendants, that complaint
must provide a plausible factual basis to distinguish the
conduct of each of the defendants.").  Accordingly, Plaintiff's
generalized conclusory allegations relating to all "Defendants"
also fail to establish claims for direct trademark infringement
against the Online Platform 12(b)(6) Moving Defendants.

Strauss' "T-shirt . . . depict[ing] an apple surrounding a list
of New York City neighborhoods," (Memorandum of Law in Support
of Defendant Levi Strauss & Co.'s Motion to Dismiss the
Complaint Pursuant to F.R.C.P. 12(b)(6) and 21 or,
Alternatively, for a More Definite Statement and to Sever ("Levi
Strauss' Mem."), dated Sept. 25, 2018 [dkt. no. 337], at 3)
(collectively, the "T-Shirts").  Express and Levi Strauss note
that Plaintiff did not identify the T-Shirts in the FAC.
(Express' Mem. at 6; Levi Strauss' Mem. at 2.)  Instead, after
Express and Levi Strauss each contacted Plaintiff and requested
details about their alleged infringement, Plaintiff sent them an
image of the T-Shirts, which Express and Levi Strauss
subsequently submitted to the Court as exhibits to declarations
filed with their memoranda of law in support of their respective
motions to dismiss.  (See Exhibit C to Declaration of Paul
Schwartzberg in Support of Defendant Express, Fashion Operations
LLC's Motion to Dismiss, dated Sept. 27, 2018 [dkt. no. 343-1],
at 8; Exhibit A to Declaration of Gia L. Cincone in Support of
Defendant Levi Strauss & Co.'s Motion to Dismiss, dated Sept.
25, 2018 [dkt. no. 338-1], at 5).

   "On a motion to dismiss for failure to state a claim"
pursuant to Rule 12(b)(6), "a court's consideration is limited
to the factual allegations in [the complaint], which are
accepted as true, to documents attached to the complaint as an

exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff[ ] had knowledge and relied on in bringing suit." Franklin, 2018 WL 3528731, at *4 (quoting Brass, 987 F.2d at 150).  "[A] plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." Chambers, 282 F.3d at 153 (emphasis in original).  The "same [Rule 12(b)(6) motion to dismiss] standard applies to motions to dismiss for pro se plaintiffs," Weican Meng v. Xinhuanet Co., Ltd., 16 Civ. 6127(ER), 2017 WL 3175609, at *2 (S.D.N.Y. July 25, 2017), even though "[p]ro se plaintiff filings are liberally construed," Franklin, 2018 WL 3528731, at *4.

Therefore, "[w]hile [Express and Levi Strauss] may be correct that Exhibits [C and A] to the [Schwartzberg and Cincone] Declaration[s, respectively] are central to [Plaintiff's] case against [Express and Levi Strauss], they have not been attached to or incorporated by reference into the [FAC]" by Plaintiff. U.S. Bank Nat. Ass'n v. Bank of Am., N.A., No. 12 Civ. 4873(CM), 2012 WL 6136017, at *2 (S.D.N.Y. Dec. 11, 2012).  Throughout the FAC, Plaintiff alleges that Express and Levi Strauss sold several clothing items that infringed his

28

marks, (see, e.g., FAC ¶ 244 (alleging Express is "using
Plaintiff's . . . mark[s] in commerce in connection with the
sale and advertising of clothing items without Plaintiff's
consent" (emphasis added)); id. ¶ 245 (alleging Express' "use of
Plaintiff's trademarks . . . in connection with the advertising
and sale of t-shirts violates and infringes on Plaintiff's . . .
mark" (emphasis added)); id. ¶ 256 (alleging Levi Strauss "is
using Plaintiff's . . . mark[s] in commerce in connection with
the sale and advertising of clothing items without Plaintiff's
consent" (emphasis added)); id. ¶ 257 (alleging Levi Strauss'
"use of Plaintiff's trademarks . . . in connection with the
advertising and sale of t-shirts violates and infringes on
Plaintiff's . . . mark" (emphasis added))), thereby betraying
the fact that Plaintiff did not necessarily rely on the T-Shirts
in drafting the FAC.  See U.S. Bank, 2012 WL 6136017, at *2.
"Accordingly, [the Court] will not consider [the] [e]xhibits in
ruling on [Express and Levi Strauss'] motion[s] to dismiss."
Id.

     In addition to the allegations outlined above, Plaintiff
alleges Express is "designing, manufacturing, printing,
marketing, promoting, selling and offering for sale clothing
items displaying and under Plaintiff's . . . trademarks, from
its retail store locations and via online ecommerce platforms
including www.express.com."  (FAC ¶ 243.)  Plaintiff further

alleges that Express "uses Plaintiff's . . . marks on the
display associated with promoting the sale of various t-shirts
offered under [P]laintiff's trademarks on its website and at
several retail locations in New York City," and that such "use
. . . is a 'use in commerce' of Plaintiff's trademarks."  (Id.
¶ 248.)

In addition to the allegations outlined above, Plaintiff
alleges Levi Strauss is "designing, manufacturing, printing,
marketing, promoting, selling and offering for sale clothing
items displaying and under Plaintiff's . . . trademarks, from
its retail store locations, on online ecommerce platforms
including www.levis.com and at Macy's retail store locations."
(Id. ¶ 255.)  Plaintiff further alleges that Levi Strauss "uses
Plaintiff's . . . marks printed on t-shirts and on the display
associated with promoting the sale of various t-shirts offered
under [P]laintiff's trademarks at Macy's retail locations" and
that such "use . . . is a 'use in commerce' of Plaintiff's
trademarks."  (Id. ¶ 260.)

Plaintiff alleges that "LES Strong NYC [and] Laura Sumampow
Lopez . . . promot[e] apparel and operat[e] a clothing business
that sells clothing items that infringe on Plaintiff's
trademarks," (id. ¶ 342), by "us[ing] . . . acronyms" of
Plaintiff's trademarks "in connection with clothing [that]

infringes Plaintiff's" trademarks, (id. ¶¶ 332-33), and
"utiliz[ing] residents and customers of Plaintiff['s]. . .
business that [P]laintiff has utilized as models and in product
advertisements and promotions . . . to promote . . . LES STRONG
NYC clothing," (id. ¶ 338).  In addition, Plaintiff alleges LES
Strong is "manufacturing, printing, marketing, promoting,
selling and offering for sale various t-shirts, caps and other
clothing items bearing Plaintiff's . . . marks which violate
Plaintiff's trademark rights in [his] marks."  (Id. ¶ 331.)

　　　Courts in this district have long held that "[t]he mere
assertion of trademark infringement, without any factual
allegations of the nature of the infringement, simply does not
give Defendants fair notice of the claims against them." Felix
the Cat Prods., Inc. v. California Clock Co., No. 04 Civ. 5714
DAB, 2007 WL 1032267, at *4 (S.D.N.Y. Mar. 30, 2007); see also
Dow Jones & Co., Inc. v. Int'l Sec. Exch., Inc., 451 F.3d 295,
307 (2d Cir. 2006) (finding trademark claims "fail[ed] even the
liberal standard of Rule 12(b)(6)" where they "consist[ed] of
conclusory allegations unsupported by factual assertions"
instead of "any factual allegations concerning the nature of the
threatened use, d[id] not give the defendants fair notice of the
claims against them and d[id] not show, by facts alleged, that
[plaintiff] [wa]s entitled to relief" (citations omitted)).

Here, Plaintiff's allegations that the Retail 12(b)(6)
Moving Defendants used Plaintiff's trademarks in commerce fall
well short of the "plausibility standard" for a complaint,
Twombly, 550 U.S. at 560, because they are "without any factual
allegations concerning the nature of the . . . use, and do[ ]
not give [the Retail 12(b)(6) Moving Defendants] fair notice of
the claims against [them]." Dow Jones, 451 F.3d at 307.
Plaintiff's failure to identify the Retail 12(b)(6) Moving
Defendants' allegedly infringing products items is fatal to his
claims. See Public Free Will Corp. v. Verizon Commc'ns Inc.,
15-CV-6354(RMM)(JO), 2017 WL 1047330, at *4 (E.D.N.Y. Mar. 17,
2017) (finding no "use" where "[plaintiff] does not provide any
facts, details, or descriptions concerning [defendant's] alleged
advertisement, nor does it provide a copy of [defendant's]
advertisement that uses [the allegedly infringing] term 'Free
Will.'").

At bottom, Plaintiff's allegations against the Retail
12(b)(6) Moving Defendants amount to nothing more than legal
conclusions and, while "the Court must accept as true all
factual allegations set forth in the complaint and draw all
reasonable inferences in favor of the plaintiff" in considering
a motion under Rule 12(b)(6), Peek & Cloppenburg KG v. Revue,
LLC, No. 11 Civ. 5967(DAB), 2012 WL 4470556, at *2 (S.D.N.Y.
Sept. 19, 2012), it is "not bound to accept as true a legal

conclusion couched as a factual allegation," Twombly, 550 U.S. at 555 (citation omitted); see also Williams v. Calderoni, No. 11 Civ. 3020(CM), 2012 WL 691832, at *6 (S.D.N.Y. Mar. 1, 2012), aff'd sub nom. Williams v. Schwartz, 529 F. App'x 89 (2d Cir. 2013) ("The Court's solicitousness toward pro se plaintiffs does not extend to accepting implausible allegations or legal conclusions expressed as facts. To do so would enable any pro se plaintiff effectively to bypass Twombly and Iqbal entirely simply by the expressly forbidden 'formulaic recitation of the elements of a cause of action.'" (quoting Twombly, 550 U.S. at 555); Manigault v. ABC Inc., No. 17-CV-7375(KNF), 2018 WL 2022823, at *3 (S.D.N.Y. Apr. 12, 2018) ("Conclusory allegations that the defendant violated the standards of law do not satisfy the need for plausible factual allegations." (citations omitted)).

Accordingly, because Plaintiff fails to allege that any of the Retail 12(b)(6) Moving Defendants "use[d]" his trademarks "in commerce,"[21] Franklin, 2018 WL 3528731, at *10 (citation

---

[21] In addition to the specific allegations against individual Retail 12(b)(6) Moving Defendants discussed above, Plaintiff makes several generalized allegations against all "Defendants" collectively without separately and specifically identifying their individual alleged conduct. (See FAC ¶¶ 1, 361-75.) For the same reasons the Court found these generalized conclusory allegations relating to all "Defendants" fail to establish claims for direct trademark infringement against the Online Platform 12(b)(6) Moving Defendants, the Court finds (continued)

omitted), the Court finds Plaintiff fails to state claims for direct trademark infringement against the Retail 12(b)(6) Moving Defendants.

### ii. Indirect Trademark Infringement

Interpreting the FAC to raise the "strongest [claims] that [it] suggest[s]," Hill, 657 F.3d at 122 (citation omitted), the FAC alleges that the Online Platform 12(b)(6) Moving Defendants indirectly infringed Plaintiff's trademarks.[22]  Specifically, Plaintiff asserts that Microsoft, Hostway, GoDaddy, and Pixels are liable for both vicarious and contributory trademark infringement, and that Poshmark, Shopify, and Broihier are liable for only contributory trademark infringement.  The Court addresses Plaintiff's theories of vicarious liability and contributory liability in turn.

### a. Vicarious Trademark Infringement

"Vicarious liability for trademark infringement requires a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or

---

(continued) they also fail to establish such claims against the Retail 12(b)(6) Moving Defendants.  See footnote 19 in Section III.A.1.i.a, supra.

[22] It does not appear that the FAC alleges that the Retail 12(b)(6) Moving Defendants indirectly infringed Plaintiff's marks.

34

control over the infringing product." Kelly-Brown v. Winfrey,
717 F.3d 295, 314 (2d Cir. 2013) (citation omitted) (affirming
dismissal of vicarious trademark infringement claim where
plaintiff failed to adequately allege the existence of a
partnership or agency relationship).  Here, Plaintiff alleges
that Microsoft has "an actual partnership" with Spirit Fund and
that "both have the authority to bind one another in
transactions that control the infringing products and
activities" from www.spiritshop.com.  (FAC ¶ 156.)  Likewise,
Plaintiff alleges that Hostway and Pixels have "an actual
partnership and business relationship" and that "both have the
authority to bind one another in transactions that control the
infringing products and activities" from www.fineartamerica.com.
(Id. ¶ 168.)  As to GoDaddy, Plaintiff similarly argues it has
"an actual partnership and business relationship" with "the
registrant of the www.cruvie.com domain" and that "both have the
authority to bind one another in transactions that control the
infringing products and activities" from www.cruvie.com.  (Id.
¶ 189.)

    These allegations are nothing more than a restatement of
the legal standard and are plainly insufficient to survive a
motion to dismiss.  Twombly, 550 U.S. at 555 ("[A] plaintiff's
obligation to provide the grounds of his entitle[ment] to relief
requires more than labels and conclusions, and a formulaic

recitation of a cause of action's elements will not do."
(internal quotation marks and citation omitted)); see also
Gucci, 721 F. Supp. 2d at 247 ("The vague, puffery-like
references to a 'partnership' between these companies and
website merchants are not enough to support vicarious
liability."). Moreover, Plaintiff's conclusory allegations that
Microsoft, Hostway, and GoDaddy are "liable for . . . vicarious
. . . trademark infringement," (FAC ¶¶ 157, 169, 190), amount to
nothing more than legal conclusions and, while "the Court must
accept as true all factual allegations set forth in the
complaint and draw all reasonable inferences in favor of the
plaintiff" in considering a motion under Rule 12(b)(6), Peek,
2012 WL 4470556, at *2, it is "not bound to accept as true a
legal conclusion couched as a factual allegation," Twombly, 550
U.S. at 555 (citation omitted).

Accordingly, Plaintiff fails to state claims for vicarious
trademark liability against Microsoft, Hostway, GoDaddy, and
Pixels.

### b. Contributory Trademark Infringement

To state a claim for contributory trademark infringement,
"a plaintiff must allege that defendant either (1) intentionally
induce[d] another to infringe a trademark" (referred to herein
as the "Intentional Inducement Prong") "or (2) continue[d] to

supply its [product or service] to one whom it [knew] or
[had] reason to know [was] engaging in trademark infringement"
(together with the next sentence, referred to herein as the
"Knowledge and Control Prong"). Row, Inc. v. Hotels, No. 15
Civ. 4419(JFK), 2018 WL 3756456, at *5 (S.D.N.Y. July 19, 2018)
(internal quotation marks and citations omitted).  "Where . . .
a plaintiff alleges a service provider's contributory liability,
it is required to allege that said service provider had more
than a general knowledge or reason to know that its service is
being used to [infringe a trademark], and sufficient control
over infringing activity to merit liability."  Id. at *6
(internal quotation marks and citations omitted); see Kelly-
Brown, 717 F.3d at 314 (affirming dismissal of plaintiff's
claims for contributory trademark infringement where plaintiff
failed to adequately allege either prong of contributory
infringement).

Plaintiff appears to attempt to allege claims for
contributory trademark infringement under the Intentional
Inducement Prong against Microsoft, Hostway, and GoDaddy.
Plaintiff appears to attempt to allege claims for contributory
trademark infringement under the Knowledge and Control Prong
against all of the Online Platform 12(b)(6) Moving Defendants.
The Court addresses each prong in turn.

### 1. Intentional Inducement Prong

As to the Intentional Inducement Prong, Plaintiff does not plead any facts to suggest that Microsoft, Hostway, or GoDaddy intentionally induced another to infringe his trademarks. "Intentional inducement requires specific acts undertaken with knowledge of infringing behavior and with intent to cause infringement." Gym Door Repairs, Inc. v. Young Equip. Sales, Inc., 206 F. Supp. 3d 869, 905 (S.D.N.Y. 2016).

Here, Plaintiff alleges that Microsoft, Hostway, and GoDaddy are "inducing the infringement of Plaintiff's . . . marks by continuing to provide" either "hosting services" or "online store and hosting services" to Spirit Fund, Pixels, and www.cruvie.com, respectively, who Microsoft, Hostway, and GoDaddy "know[ ] to be engaged in infringing activities against Plaintiff's trademarks." (Id. ¶¶ 154, 166, 187.)  Plaintiff fails, however, to allege any "specific acts" that Microsoft, Hostway, or GoDaddy have taken to encourage the alleged infringement.  These allegations amount to nothing more than legal conclusions and, while "the Court must accept as true all factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff" in considering a motion under Rule 12(b)(6), Peek, 2012 WL 4470556, at *2, it is "not bound to accept as true a legal conclusion couched as a

factual allegation," Twombly, 550 U.S. at 555 (citation omitted).

Accordingly, Plaintiff's conclusory allegations are insufficient to state a claim for contributory trademark infringement based on intentional inducement against Microsoft, Hostway, and GoDaddy.

### 2. Knowledge and Control Prong

As to the Knowledge and Control Prong, Plaintiff fails to plead facts to suggest that any of the Online Platform 12(b)(6) Moving Defendants engaged in contributory trademark infringement by knowingly supplying services to an alleged infringer that they knew or had reason to know was engaging in allegedly infringing activity, and that they had sufficient control over any allegedly infringing activity to merit liability. Row, Inc., 2018 WL 3756456, at *5-6. Specifically as to the "knowledge" half of this prong, courts in this district have held that "the doctrine of contributory trademark infringement should not be used to require defendants to refuse to provide a product or service to those who merely might infringe the trademark." Tiffany (NJ) Inc. v. eBay, Inc., 576 F. Supp. 2d 463, 509-10 (S.D.N.Y. 2008) (Tiffany I), aff'd in part, rev'd in part, 600 F.3d 93 (2d Cir. 2010) (Tiffany II) (emphasis in original); see also id. at 510 ("[W]hether a defendant can

anticipate that some illegal substitution will occur to some unspecified extent, and by some unknown [parties], should not by itself be a predicate for contributory liability" (internal quotation marks and citation omitted)).

The Court of Appeals has also held that "[f]or contributory trademark infringement liability to lie, a service provider must have more than a general knowledge or reason to know that its service is being used to sell counterfeit goods." Tiffany II, 600 F.3d at 107. "Some contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary." Id.

In Tiffany II, the Court of Appeals noted the district court record contained evidence "demonstrat[ing] that eBay had generalized notice that some portion of the Tiffany goods sold on its website might be counterfeit" because Tiffany had filed "thousands of" "Notice of Claimed Infringement forms" "with eBay alleging . . . that certain listings were counterfeit." 600 F.3d at 106 (emphasis in original). Therefore, the Court of Appeals concluded that such evidence was insufficient to satisfy the "knows or has reason to know" requirement because Tiffany failed "to show that eBay knew or had reason to know of specific instances of actual infringement." Id. at 107 (emphasis added) (internal quotation marks omitted).

Here, although Plaintiff alleges that he "provided" Microsoft, Hostway, GoDaddy, and Shopify, "with an Infringement Notice," (FAC ¶¶ 150, 162, 174, 183), and makes the conclusory assertion that Microsoft, Hostway, and GoDaddy and are "knowingly supplying services" to or under Spirit Fund, Pixels, and www.cruvie.com, respectively, (id. ¶¶ 155, 167, 188), who they "know[ ] to be engaged in infringing activities," (id. ¶¶ 154, 166, 188), Plaintiff does not allege that Microsoft, Hostway, GoDaddy, or Shopify was ever made aware of any "specific" allegedly infringing conduct by any alleged infringer in connection with their services prior to this action.  Tiffany II, 600 F.3d at 107; see also Sellify Inc., 2010 WL 4455830, at *4 (finding defendant Amazon lacked "particularized knowledge" where plaintiff called and informed defendant Amazon of allegedly infringing ads by a third party).  Plaintiff does not make a single allegation as to Poshmark, Pixels, or Broihier's knowledge of allegedly infringing activity.

As such, Lopez fails to allege that the Online Platform 12(b)(6) Moving Defendants knowingly supplied their services to any alleged infringers.

As to the "control" half of this prong, Plaintiff fails to allege any facts to support his conclusory allegation that the Online Platform 12(b)(6) Moving Defendants have the requisite

41

control over any allegedly infringing activity.  Although the
FAC asserts that Microsoft, Hostway, GoDaddy, Poshmark, and
Shopify have "the ability to manage, monitor and control the
infringing activity that violates Plaintiff's trademarks" from
or on certain websites, (FAC ¶¶ 95, 113, 155, 167, 177, 188),
Pixels "and its account users have the ability and control to
advertise and sell t-shirts and other clothing items that do not
include the use of Plaintiff's . . . marks," (id. ¶ 130), and
Broihier "has the ability to monitor and control and prevent the
infringing activity against Plaintiff's trademarks from the
website www.fineartarnerica.com," (id. ¶ 136), the FAC fails to
assert how or in what manner the Online Platform 12(b)(6) Moving
Defendants can or do manage, monitor, or control such activity.
Instead, these allegations are nothing more than restatements of
the legal standard and are thus plainly insufficient to survive
a motion to dismiss.  See Twombly, 550 U.S. at 555 ("[A]
plaintiff's obligation to provide the grounds of his
entitle[ment] to relief requires more than labels and
conclusions, and a formulaic recitation of a cause of action's
elements will not do.") (internal quotation marks and citation
omitted); see also Nomination Di Antonio E Paolo Gensini S.N.C.
v. H.E.R. Accessories Ltd., No. 07 Civ. 6959(DAB), 2009 WL
4857605, at *7 (S.D.N.Y. Dec. 14, 2009) (finding plaintiffs'
assertion that defendants "contributed to [the alleged

infringement] by their knowing participation in the development, promotion and sale of [the infringing product]," without "any factual allegations as to how the [defendants] have done so" insufficient to allege defendants' direct control and monitoring of the allegedly infringing product).  Plaintiff's conclusory allegations that Microsoft, Hostway, and GoDaddy have "the ability to suspend or remove the infringing clothing products [they are] displaying, advertising and offering for sale" from "the ecommerce store and website[s]" fail for the same reasons. (FAC ¶¶ 152, 164, 185.)

As such, Plaintiff fails to allege that the Online Platform 12(b)(6) Moving Defendants had sufficient control over any allegedly infringing activity to merit liability.

Lastly, Plaintiff's allegation that GoDaddy, Microsoft, and Hostway are "liable for . . . contributory trademark infringement," (FAC ¶¶ 157, 169, 190), presumably as to both prongs, amounts to nothing more than a legal conclusion and, while "the Court must accept as true all factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff" in considering a motion under Rule 12(b)(6), Peek, 2012 WL 4470556, at *2, it is "not bound to accept as true a legal conclusion couched as a factual allegation," Twombly, 550 U.S. at 555 (citation omitted).

43

Therefore, Plaintiff fails to state claims for contributory trademark liability against the Online Platform 12(b)(6) Moving Defendants.

Accordingly, as Plaintiff fails to assert that the 12(b)(6) Moving Defendants are directly or indirectly liable for trademark infringement under the Lanham Act, Counts I and II are dismissed against the 12(b)(6) Moving Defendants.

### 2. New York Common Law Claims (Count III)

As to Count III, which asserts trademark infringement and unfair competition under New York common law, (FAC ¶¶ 371-75), "the legal standards are 'virtually identical' to the standards for trademark infringement and unfair competition under the Lanham Act, except that the New York common law claims 'require[ ] an additional showing of bad faith.'" Lopez, 2017 WL 3278932, at *4 (quoting TechnoMarine SA v. Jacob Time, Inc., No. 12 Civ. 0790(KBF), 2012 WL 2497276, at *5 (S.D.N.Y. June 22, 2012)). "Because [Plaintiff] has failed to prove his Lanham Act claims, his New York common law trademark and unfair competition claims must also be dismissed." Id.; see also Tiffany I, 576 F. Supp. 2d at 519 ("Since Tiffany has failed to prove its Lanham Act claims, it follows a fortiori that it has failed to prove its common law claims as well.").

Accordingly, Count III is dismissed against the 12(b)(6)
Moving Defendants.

### 3. Unjust Enrichment Claim (Count V)

As to Count V, which asserts unjust enrichment, (FAC
¶¶ 383-85), Plaintiff alleges that all "Defendants' actions
constitute unjust enrichment," (id. ¶ 385), because they have
"unjustly retained profits from the sale of clothing goods and
accessories bearing Plaintiff's . . . marks," (id. ¶ 384).   In
addition, Plaintiff alleges "actual confusion" that "Plaintiff
has already experienced . . . in connection with this matter
. . . as to the affiliation or connection between the Defendants
and Plaintiff [has] result[ed] in the unjust enrichment of
Defendants by using Plaintiff's registered trademarks and
copyrights." (Id. ¶ 1; see also id. ¶ 369 ("Defendants have
unfairly profited from the actions alleged herein and will
continue to unfairly profit and become unjustly enriched unless
and until such conduct is enjoined by this Court."); id. ¶ 374
("Defendants hasve [sic] infringed and continues to infringe on
Plaintiff's common law rights in [his] . . . marks and
Defendants have become unjustly enriched by such acts of
infringement.").)

"[T]he theory of unjust enrichment lies as a quasi-contract
claim and contemplates an obligation imposed by equity to

prevent injustice, in the absence of an actual agreement between the parties." Lopez, 2017 WL 3278932, at *4 (internal quotation marks and citations omitted). "[T]here are no indicia of an enrichment that was unjust where the pleadings fail[ ] to indicate a relationship between the parties that could have caused reliance or inducement." Id. (citation omitted). Here, just like he did in Lopez, Plaintiff "does not allege any connection or relationship to [any 12(b)(6) Moving Defendant] that could have caused any reliance or inducement."[23] Id. Moreover, for the same reasons the Court found Plaintiff's generalized conclusory allegations lumping all "Defendants" together failed to establish claims for direct trademark infringement against the Online Platform 12(b)(6) Moving Defendants, see footnote 19 in Section III.A.1.i.a, supra, the Court also finds that Plaintiff's generalized conclusory unjust enrichment allegations lumping all "Defendants" together, (see FAC ¶¶ 1, 369, 374, 383-85), fail to establish claims of unjust enrichment against the 12(b)(6) Moving Defendants.

---

[23] Plaintiff's allegations that Microsoft, Hostway, and GoDaddy are "inducing the infringement by continuing to provide" either "hosting services" or "online store and hosting services" to other entities that are "engaged in infringing activity against" Plaintiff's trademarks and/or copyrights, (id. ¶¶ 154, 166, 187), say nothing of unjust enrichment.

Accordingly, Count V is dismissed against the 12(b)(6) Moving Defendants.

## B. 12(c) Moving Defendants' Motions

### 1. Lanham Act Claims (Counts I and II)

In the FAC, Plaintiff asserts two Lanham Act claims against the 12(c) Moving Defendants: trademark infringement under 15 U.S.C. §§ 1114 (Count I); and unfair competition and false designation of origin under 15 U.S.C. § 1125(a) (Count II). (FAC ¶¶ 364-70.)  Plaintiff alleges that the 12(c) Moving Defendants directly and indirectly infringed his trademarks. The Court addresses each type of alleged infringement in turn.

### i. Direct Trademark Infringement

Plaintiff alleges that Bonanza[24] (an "e-commerce vendor" (id. ¶ 68)), and Acquia ("web hosting company," (FAC ¶ 299)), directly infringed his marks, (see, e.g., id. ¶¶ 68, 71, 299). Plaintiff alleges that Bonanza is "using the marks for commercial business purposes and for a profit from the website www.bonanza.com" by "allow[ing] its users and account holders"

---

[24] Like several of the 12(b)(6) Moving Defendants, (see, e.g., Express' Mem. at 11), Bonanza argues that Plaintiff cannot show he owns a valid trademark, (see Bonanza's Mem. at 8).  However, because the Court finds Bonanza did not use Plaintiff's marks in commerce, the Court need not resolve this issue.  Therefore, for the sake of the foregoing analysis, the Court assumes arguendo, that Plaintiff owns the marks.

to "sell, offer for sale, promote and advertise clothing items
that infringe on Plaintiff's . . . trademarks."  (FAC ¶¶ 68-69,
148.)  Plaintiff alleges that Acquia "provides web hosting
services under its control and direction and is providing
hosting, and online retail store services to the website
www.teepublic.com which provides the platform and ability to
purchase headwear and other clothing items that infringe
Plaintiff's . . . trademarks."[25]  (Id. ¶ 299.)  Because these
allegations are substantively the same as Plaintiff's
allegations of direct trademark infringement against the Online
Platform 12(b)(6) Moving Defendants, (see id. ¶¶ 89, 116-20,
124, 131-32, 149, 151, 161, 163, 173, 175, 182, 184), and
because courts evaluate a Rule 12(c) motion under the same
standard as a Rule 12(b)(6) motion, see Evans, 2016 WL 1746094,
at *1, the Court finds that Plaintiff fails to plead that the
12(c) Moving Defendants directly infringed Plaintiff's
trademarks for the same reasons it has already found Plaintiff

---

[25] In response, Acquia "denies that it is providing hosting,
online or retail store services to the website
www.teepublic.com." (Acquia's Mem. at 4.)  The Court need not
determine whether Acquia actually hosts the website
www.teepublic.com. Even "[a]ccept[ing] as true all allegations
in the complaint and draw[ing] all reasonable inferences in
favor of the non-moving party," as the Court must on a 12(c)
motion, see Evans v. Rockland Cty. Sheriff's Dep't, No. 14 CV
7379(NSR), 2016 WL 1746094, at *1 (S.D.N.Y. Apr. 29, 2016),
Plaintiff's allegation still fails for the reasons set forth
below.

fails plead that the Online Platform 12(b)(6) Moving Defendants directly infringed Plaintiff's marks, <u>see</u> Section III.A.1.i.a, <u>supra</u>.

Plaintiff does, however, assert one allegation unique to Bonanza.  Plaintiff alleges that Bonanza "is using Plaintiff's . . . trademark as a keyword in online advertising that is directing consumers looking for Plaintiff's clothing to Bonanza.com's website to purchase clothing products from its website instead," and that such "use of Plaintiff's trademark in search engine keyword advertising programs by Bonanza.com are a 'use in commerce' of Plaintiff's brand name."  (FAC ¶ 171.) However, Plaintiff "does not allege that [Bonanza] has ever offered or sold <u>his</u> mark." <u>Lopez</u>, 2017 WL 3278932, at *3 (emphasis in original).  (<u>See, e.g.</u>, FAC ¶ 80 ("Defendant Bonanza.com receives a profit and financial benefit from the clothing products <u>its account users sell</u> from the www.bonanza.com website selling platform that infringe Plaintiff's trademarks." (emphasis added)).)  "Instead, his theory of [Bonanza's] alleged infringement" here "is premised on the appearance of his images in organic search results, not paid advertisements." <u>Lopez</u>, 2017 WL 3278932, at *3.

Courts in this district have held that "[t]he mere appearance of Plaintiff's name or image as part of the search

results displayed in response to a user-generated query does not mean that the relevant company used Plaintiff's name for advertising or trade purposes." Id.; see also Merck & Co., 425 F. Supp. 2d at 415-16 (finding use of a trademark as a keyword to trigger defendants' websites as sponsored links did not involve placement of the trademark "on any goods or containers or displays" nor did it "indicate source or sponsorship" and therefore was not use for direct trademark infringement purposes). Plaintiff has therefore "not alleged facts sufficient to demonstrate use in commerce [because he] 'has not identified any advertisements using his marks from which [Bonanza] received monetary benefit.'" Lopez, 2017 WL 3278932, at *3 (quoting Manchanda v. Google, No. 16-CV-3350(JPO), 2016 WL 6806250, at *4 n.5 (S.D.N.Y. Nov. 16, 2016)).

Accordingly, because Plaintiff fails to allege that either 12(c) Moving Defendant "use[d]" his trademarks "in commerce,"[26] Franklin, 2018 WL 3528731, at *10 (citation omitted), the Court

---

[26] In addition to the specific allegations against individual 12(c) Moving Defendants discussed above, Plaintiff makes several generalized allegations against all "Defendants" collectively without separately and specifically identifying their individual alleged conduct. (See, e.g., FAC ¶¶ 1, 361-75.) For the same reasons the Court found these generalized conclusory allegations relating to all "Defendants" fail to establish claims for direct trademark infringement against the Online Platform 12(b)(6) Moving Defendants, the Court finds they also fail to establish such claims against the 12(c) Moving Defendants. See footnote 19 in Section III.A.1.i.a, supra.

finds Plaintiff fails to state claims for direct trademark infringement against the 12(c) Moving Defendants.

### ii. Indirect Trademark Infringement

Interpreting the FAC to raise the "strongest [claims] that [it] suggest[s]," Hill, 657 F.3d at 122 (citation omitted), the FAC alleges that the 12(c) Moving Defendants indirectly infringed Plaintiff's trademarks. Specifically, Plaintiff asserts that Bonanza is liable for both vicarious and contributory trademark infringement while Acquia is liable for only contributory trademark infringement. The Court addresses Plaintiff's theories of vicarious liability and contributory liability in turn.

### a. Vicarious Trademark Infringement

Plaintiff alleges that Bonanza has "an actual partnership and business relationship" with Digital Fortress and that "both have the authority to bind one another in transactions that control the infringing products and activities." (FAC ¶ 144.) Because this allegation is substantively the same as Plaintiff's allegations of vicarious liability against Microsoft, Hostway, GoDaddy, and Pixels (see ¶¶ 156, 168, 189), and because courts evaluate a Rule 12(c) motion under the same standard as a Rule 12(b)(6) motion, see Evans, 2016 WL 1746094, at *1, the Court finds that Plaintiff fails to state a claim for vicarious

trademark liability against Bonanza for the same reasons it has already found Plaintiff fails to state a claim for vicarious trademark liability against Microsoft, Hostway, GoDaddy, and Pixels, see Section III.A.1.ii.a, supra.

### b. Contributory Trademark Infringement

Plaintiff fails to plead claims for contributory trademark infringement against the 12(c) Moving Defendants under either the Intentional Inducement Prong or Knowledge or Control Prong, the elements of which are explained above. See Sections III.A.1.ii.b.1-2, supra. The Court addresses each prong in turn.

### 1. Intentional Inducement Prong

As to the Intentional Inducement Prong, Plaintiff does not plead any facts to suggest that the 12(c) Moving Defendants intentionally induced another to infringe his trademarks. Plaintiff merely alleges that the 12(c) Moving Defendants are "inducing the infringement" of Plaintiff's marks by "continuing to provide" either "hosting services" or "online and hosting services" to websites that are "engaged in infringing activity against" Plaintiff's trademarks. (Id. ¶¶ 79, 301.) Because these allegations are substantively the same as Plaintiff's allegations of intentional inducement against Microsoft, Hostway, and GoDaddy, (see id. ¶¶ 154, 166, 187), and because

courts evaluate a Rule 12(c) motion under the same standard as a
Rule 12(b)(6) motion, see Evans, 2016 WL 1746094, at *1, the
Court finds that Plaintiff fails to state claims for
contributory trademark infringement based on intentional
inducement against the 12(c) Moving Defendants for the same
reasons it has already found Plaintiff fails to state claims for
contributory trademark infringement based on intentional
inducement against Microsoft, Hostway, and GoDaddy, see Section
III.A.1.ii.b.1, supra.

### 2. Knowledge and Control Prong

As to the Knowledge and Control Prong, Plaintiff fails to
plead facts to suggest that the 12(c) Moving Defendants engaged
in contributory trademark infringement by knowingly supplying
services to an alleged infringer that they knew or had reason to
know was engaging in allegedly infringing activity and that they
had sufficient control over any allegedly infringing activity to
merit liability. Row, Inc., 2018 WL 3756456, at *5-6. As to
the "knowledge" half of this prong, Plaintiff alleges that he
"provided" the 12(c) Moving Defendants "with an Infringement
Notice." (FAC ¶¶ 79, 300.) Because these allegations are
substantially the same as Plaintiff's allegations of knowledge
against Microsoft, Hostway, GoDaddy, and Shopify, (see id.
¶¶ 150, 162, 174, 183), and because courts evaluate a Rule 12(c)

motion under the same standard as a Rule 12(b)(6) motion, see
Evans, 2016 WL 1746094, at *1, the Court finds that Plaintiff
fails to allege that the 12(c) Moving Defendants knowingly
supplied their services to an alleged infringer for the same
reasons it has already found Plaintiff fails to allege that
Microsoft, Hostway, GoDaddy, and Shopify knowingly supplied
their services to an alleged infringer,[27] see Section
III.A.1.ii.b.2, supra.

As to the "control" half of this prong, Plaintiff merely
alleges that Bonanza "has the direct control over the products
sold from its website and has the ability to monitor and control
the infringing activity," (FAC ¶ 81), and that Acquia "has the
ability to manage, monitor and control the infringing activity
that violates Plaintiff's trademarks on the www.teepublic.com
website," (id. ¶ 302).  Because these allegations are
substantively the same as Plaintiff's allegations of control
against Microsoft, Hostway, GoDaddy, Poshmark, and Shopify, (id.

---

[27] Plaintiff also alleges that Digital Fortress is "knowingly
supplying services" to Bonanza, which Digital Fortress "knows to
be engaged in infringing activities," (id. ¶ 143) -- but not the
other way around.  This is therefore an allegation of
contributory trademark liability against Digital Fortress, not
Bonanza.  However, even if the Court were to construe it as an
allegation of contributory trademark liability against Bonanza,
it would fail for the same reasons Plaintiff's substantively
similar allegations against Microsoft, Hostway, and GoDaddy,
(see id. ¶¶ 155, 167, 188), fail.  See Section III.A.1.ii.b.2,
supra.

¶¶ 95, 113, 155, 167, 177, 188), and because courts evaluate a Rule 12(c) motion under the same standard as a Rule 12(b)(6) motion, see Evans, 2016 WL 1746094, at *1, the Court finds that Plaintiff fails to allege that the 12(c) Moving Defendants had sufficient control over any allegedly infringing activity to merit liability for the same reasons it has already found Plaintiff fails to allege Microsoft, Hostway, GoDaddy, Poshmark, and Shopify had sufficient control over any allegedly infringing activity to merit liability, see Section III.A.1.ii.b.2, supra. Therefore, Plaintiff fails to state claims for contributory trademark liability against the 12(c) Moving Defendants.

Accordingly, as Plaintiff has failed to assert that the 12(c) Moving Defendants are directly or indirectly liable for trademark infringement under the Lanham Act, Counts I and II are dismissed against the 12(c) Moving Defendants.[28]

---

[28] Bonanza also asserts the "innocent infringer defense." Gucci Am., Inc. v. Hall & Assocs., 135 F. Supp. 2d 409, 418–19 (S.D.N.Y. 2001) (internal quotation marks and citation omitted). (See Bonanza's Mem. at 11 (arguing that, "at most," Bonanza is "an innocent infringer").) "Section 32(2) [of the Lanham Act] limits trademark plaintiffs' remedies against printers and publishers or distributors 'for others' of 'electronic communication[s]' who are 'innocent infringers' to (prospective) injunctions against future printings or transmissions of the infringing material." Gucci, 135 F. Supp. 2d at 419–20 (citing 15 U.S.C. § 1114(2)(A)-(B)). The phrase "innocent infringer" "has been construed to embrace the 'actual malice' standard set forth in New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), i.e., an infringer is 'innocent' unless it acted either (1) with knowledge of the (continued)

### 2. New York Common Law Claims (Count III)

As to Count III, which asserts trademark infringement and unfair competition under New York common law, (FAC ¶¶ 371-75), "the legal standards are 'virtually identical' to the standards for trademark infringement and unfair competition under the Lanham Act, except that the New York common law claims 'require[] an additional showing of bad faith.'"  Lopez, 2017 WL 3278932, at *4 (quoting TechnoMarine, 2012 WL 2497276, at *5).  "Because [Plaintiff] has failed to prove his Lanham Act claims, his New York common law trademark and unfair competition claims must also be dismissed."  Id.; see also Tiffany I, 576 F. Supp. 2d at 519 ("Since Tiffany has failed to prove its Lanham Act claims, it follows a fortiori that it has failed to prove its common law claims as well.").

Accordingly, Count III is dismissed against the 12(c) Moving Defendants.

---

(continued) infringement or (2) with reckless disregard as to whether the material infringed the trademark owner's rights." Id.  At bottom, "[a]n innocent infringer must prove that he 'was not aware and had no reason to believe that his or her acts constituted infringement.'"  Bryant v. Europadisk, Ltd., No. 07 Civ 3050(WGY), 2009 WL 1059777, at *7 (S.D.N.Y. Apr. 15, 2009), aff'd sub nom. Bryant v. Media Right Prods., Inc., 603 F.3d 135 (2d Cir. 2010) (quoting Eastern Am. Trio Prods., Inc. v. Tang Elec. Corp., 97 F. Supp. 2d 395, 419 (S.D.N.Y. 2000)). Here, because the Court finds Plaintiff fails to establish Bonanza directly or indirectly infringed his trademarks, it need not reach his innocent infringer defense.

### 3. Copyright Infringement Under the Copyright Act Claim — Against Bonanza Only (Count IV)

Plaintiff asserts copyright infringement under the Copyright Act (17 U.S.C. § 101 et seq.) against Bonanza only (Count IV).  (FAC ¶¶ 376-82.)   Plaintiff alleges that the Bonanza is liable for both direct and indirect copyright infringement.  The Court addresses each type of alleged infringement in turn.

### i. Direct Copyright Infringement

"To establish a claim of copyright infringement, a plaintiff must establish (1) ownership of a valid copyright, and (2) unauthorized copying or a violation of one of the other exclusive rights afforded copyright owners pursuant to the Copyright Act." Wolk v. Kodak Imaging Network, Inc., 840 F. Supp. 2d 724, 741-42 (S.D.N.Y. 2012), aff'd sub nom. Wolk v. Photobucket.com, Inc., 569 F. App'x 51 (2d Cir. 2014) (quoting Byrne v. British Broad. Corp., 132 F. Supp. 2d 229, 232 (S.D.N.Y. 2001)).  "Direct liability requires 'volitional conduct' that 'causes' the infringement." Id. (quoting Cartoon Network LP, LLLP v. CSC Holdings, Inc., 536 F.3d 121, 131 (2d Cir. 2008)); see also In re AutoHop Litig., No. 12 Civ. 4155(LTS)(KNF), 2013 WL 5477495, at *5 (S.D.N.Y. Oct. 1, 2013) ("[A] person or entity cannot be found directly liable for copyright infringement without proof of some volitional act by

the person that constitutes or causes the infringement"). The "pivotal factor" in determining whether there was such a "volitional act" is the "initiation of the act of copying." Id. at *5-6. The Court of Appeals has recognized the word "copying" as "shorthand for the infringing of any of the copyright owner's . . . exclusive rights." Arista Records, LLC v. Doe 3, 604 F.3d 110, 117 (2d Cir. 2010) (internal quotation marks and citation omitted).

Here, there is no adequate aellegation of volitional conduct, thereby preventing Plaintiff from establishing direct copyright infringement. Plaintiff has two theories to hold Bonanza liable: first, that Bonanza "is an e-commerce vendor that allows its users and account holders to . . . exploit, copy, reproduce sell and offer for sale, clothing items that infringe Plaintiff's . . . copyright from its website www.bonanza.com," (id. ¶¶ 68, 70);[29] and second, that "Bonanza, without authorization or consent from Plaintiff has copied, reproduced, exploited, advertised, marketed, sold and offered for sale clothing items under Plaintiff's copyrighted Trust No

---

[29] Unlike Express and Levi Strauss' T-Shirts, see Section III.A.1.i.b, supra, Plaintiff included an image of Bonanza's allegedly infringing T-shirt in the FAC and an exhibit to the FAC. (See FAC ¶ 77; Exhibit G to FAC.) Therefore, the Court considers it here.

One T-Shirt Design," (id. ¶ 77).[30]

Plaintiff's first theory fails because a third-party user's mere "display of copyrighted images on a defendant's website does not demonstrate volition" by the defendant. Wolk, 840 F. Supp. 2d at 742-43. "[S]omething more must be shown than mere ownership of [websites or e-commerce platforms] used by others to make illegal copies." Cartoon, 536 F.3d at 130 (citation omitted). In pleading that "user[s] of [Bonanza's e-commerce] service posted [allegedly] copyrighted images that were displayed on [Bonanza's] website," Plaintiff has failed to plead that Bonanza "engage[d] in volitional conduct sufficient for copyright liability." Wolk, 840 F. Supp. 2d at 743 (citation omitted); see also In re AutoHop Litig., 2013 WL 5477495, at *6-7 (finding DISH Network did not "initiat[e] . . . the act of copying" sufficient for direct liability where "[DISH's] contribution to [the] reproduction [of the TV programming was] providing the system" and "DISH ha[d] no control over which programs [were] shown on those networks or in what order, just as it ha[d] no control over which of its subscribers choose to

---

[30] (See also FAC ¶ 78 ("The above image, copied, reproduced, sold and offered on clothing products by Bonanza.com copies constituent elements of Plaintiff's 'Trust No One T-Shirt Design' copyright and constitutes copyright infringement. It is an identical copy and transposed reproduction of the design portion of Plaintiff's registered copyright."); id. ¶ 82 (alleging Bonanza "continues to offer for sale clothing items utilizing unauthorized copies of Plaintiff's copyright").)

copy those programs" (citation omitted)).

As to Plaintiff's second theory that Bonanza itself "copied, reproduced, exploited, advertised, marketed, sold and offered for sale clothing items under Plaintiff's copyrighted Trust No One T-Shirt Design," (FAC ¶ 77), Plaintiff not only appears to contradict himself -- because Plaintiff also contends that Bonanza is merely an online platform where allegedly infringing items are sold by third-party users, (see, e.g., id. ¶¶ 68, 70, 79) -- but also, his allegations amount to nothing more than legal conclusions.  While the Court must "accept[ ] as true the factual allegations in the Complaint and draws all reasonable inferences in favor of the plaintiff" in considering a motion under Rule 12(c), Jeffreys v. City of New York, No. 99 CIV. 4602(AGS), 2000 WL 1459845, at *1 (S.D.N.Y. Sept. 29, 2000), it is "not bound to accept as true a legal conclusion couched as a factual allegation," Twombly, 550 U.S. at 555 (citation omitted).

Moreover, Plaintiff's conclusory allegations fail to set forth Bonanza's "particular infringing acts . . . with some specificity." Kelly v. L.L. Cool J., 145 F.R.D. 32, 36 n.3 (S.D.N.Y. 1992), aff'd, 23 F.3d 398 (2d Cir. 1994).  Plaintiff fails to allege "by what acts during what time [Bonanza]

infringed the copyright." Warren v. John Wiley & Sons, Inc.,
952 F. Supp. 2d 610, 617 (S.D.N.Y. 2013) (citation omitted).

Accordingly, because Plaintiff fails to allege facts
establishing that Bonanza engaged in any volitional conduct,
Plaintiff fails to allege a claim for direct copyright
infringement against Bonanza.

### ii. Indirect Copyright Infringement

Interpreting the FAC to raise the "strongest [claims] that
[it] suggest[s]," Hill, 657 F.3d at 122 (citation omitted), the
FAC alleges that Bonanza is liable for indirect copyright
infringement.  Specifically, Plaintiff asserts that Bonanza is
liable for both vicarious and contributory copyright
infringement.  The Court addresses each theory of liability in
turn.

### a. Vicarious Copyright Infringement

"While '[t]he Copyright Act does not expressly render
anyone liable for infringement committed by another,' it 'does
not preclude the imposition of liability for copyright
infringements on certain parties who have not themselves engaged
in the infringing activity.'" Wolk, 840 F. Supp. 2d at 750
(quoting Sony Corp. of Am. v. Universal City Studios, Inc., 464
U.S. 417, 435 (1984)).  "A defendant is liable for vicarious

copyright infringement if it 'profit[s] from direct infringement
while declining to exercise a right to stop or limit it.'"
Arista Records LLC v. Lime Grp. LLC, 784 F. Supp. 2d 398, 434
(S.D.N.Y. 2011) (quoting Metro-Goldwyn-Mayer Studios Inc. v.
Grokster, Ltd., 545 U.S. 913, 930 (2005)).  "To establish
liability, a plaintiff must show that the defendant '[1] had the
right and ability to supervise the infringing activity and . . .
[2] has a direct financial interest in such activities.'"  Id.
at 434-35 (quoting Gershwin Publ'g Corp. v. Columbia Artists
Mgmt., Inc., 443 F.2d 1159, 1162 (2d Cir. 1971)).

     Here, Plaintiff alleges that Bonanza "has the direct
control over the products sold from its website and has the
ability to monitor and control the infringing activity."  (FAC
¶ 81.)  This allegation says nothing, however, of "the scope of
[Bonanza's] control, if any, over the allegedly infringing
activity."  Premier Fabrics, Inc. v. Woodland Trading Inc., 42
F. Supp. 3d 549, 555 (S.D.N.Y. 2014); see also Berry v. Deutsche
Bank Tr. Co. Americas, No. 07 Civ. 7634(WHP), 2008 WL 4694968,
at *5 (S.D.N.Y. Oct. 21, 2008), aff'd, 378 F. App'x 110 (2d Cir.
2010) (finding plaintiff "fail[ed] to allege any facts showing
the degree of control necessary to state a claim of vicarious
copyright infringement" because "[t]he relationship between a
lender and borrower alone is not sufficient to establish the
right and ability to supervise the borrower").  This allegation

is simply "too vague, conclusory, and unintelligible to allow a finding that" the control element of a vicarious copyright infringement claim has been met, Gench v. HostGator.com LLC, No. 14 Civ. 3592(RA)(GWG), 2015 WL 3757120, at *11 (S.D.N.Y. June 17, 2015), report and recommendation adopted, No. 14-CV-3592 (RA), 2015 WL 4579147 (S.D.N.Y. July 29, 2015), and thus it falls well short of the pleading standards set forth in Twombly, 550 U.S. at 555.

Plaintiff's allegation that "Digital Fortress, Inc. has the ability to suspend or remove the infringing clothing products that it is displaying, advertising and offering for sale in conjunction with Defendant Bonanza.com, Inc. from the e-commerce store and website www.bonanza.com" is an allegation against Digital Fortress, not Bonanza.  (FAC ¶ 140.)  Plaintiff does not allege that Bonanza even had a "right to stop or limit [infringement]," or, as is required, "declin[ed] to exercise [that] right."  Arista Records, 784 F. Supp. 2d at 434 (quoting Grokster, 545 U.S. at 930).

Finally, Plaintiff alleges that Bonanza has "an actual partnership and business relationship" with Digital Fortress, and that "both have the authority to bind one another in transactions that control the infringing products and activities."  (FAC ¶ 144.)  Even assuming Bonanza and Digital

Fortress had "the authority to bind one another," Plaintiff has presented no evidence that Bonanza had any "right and ability to supervise" any alleged infringing activity by Digital Fortress. Wolk, 840 F. Supp. 2d at 751 (quoting Gershwin Publ'g, 443 F.2d at 1162).

Accordingly, because Plaintiff fails to plead the control element, the Court need not reach the financial element to find that Plaintiff fails to allege Bonanza is liable for vicarious copyright infringement.

### b. Contributory Copyright Infringement

"To establish a claim for contributory copyright infringement, a plaintiff must allege that the defendant 'with knowledge of the infringing activity, induce[d], cause[d], or materially contribute[d] to the infringing conduct of another.'" Brought to Life Music, Inc. v. MCA Records, Inc., No. 02 CIV. 1164(RWS), 2003 WL 296561, at *2 (S.D.N.Y. Feb. 11, 2003) (quoting Gershwin Publ'g, 443 F.2d at 1162). An allegation that a defendant "merely provid[ed] the means to accomplish an infringing activity" is insufficient to establish a claim for contributory infringement. Livnat v. Lavi, No. 96 CIV. 4967(RWS), 1998 WL 43221, at *3 (S.D.N.Y. Feb. 2, 1998) (internal quotation marks and citation omitted); see also Quiroga v. Fall River Music, Inc., No. 93 CIV. 3914(RPP), 1998

WL 851574, at *37 (S.D.N.Y. Dec. 7, 1998) ("A mere allegation
that the defendant provided the third party with the opportunity
to engage in wrongful conduct would not even be enough to
survive a motion to dismiss.").

"Participation [by the defendant] must be 'substantial.'"
Wolk, 840 F. Supp. 2d at 750 (quoting Demetriades v. Kaufmann,
690 F. Supp. 289, 294 (S.D.N.Y. 1988)).  A showing of the
defendant's substantial participation requires the plaintiff to
make "fact-based allegations" that the defendant "authorized, or
played [a] part . . . in the alleged infringement."  Warren, 952
F. Supp. 2d at 619.  "The authorization or assistance must bear
a direct relationship to the infringing acts, and the
contributory infringer must have acted in concert with the
direct infringer."  Marvullo v. Gruner & Jahr, 105 F. Supp. 2d
225, 230 (S.D.N.Y. 2000) (citation omitted).

"In addition to establishing a defendant's substantial
participation, the plaintiff must also demonstrate the
defendant's knowledge of the infringing activity."  Wolk, 840 F.
Supp. 2d at 750.  "One who 'supplies another with instruments by
which another commits a tort, must be shown to have knowledge
that the other will or can reasonably be expected to commit a
tort with the supplied instrument.'"  Id. (quoting Display
Producers, Inc. v. Shulton, Inc., 525 F. Supp. 631, 633

(S.D.N.Y. 1981)).  "The test is whether [the] wrongdoing . . .
might well have been anticipated by the defendant."  Id.
(quoting Display Producers, 525 F. Supp. at 633).  "[O]ne who
furnishes a copyrighted work to another but is innocent of any
knowledge of the other party's intended illegitimate use will
not be liable."  Livnat, 1998 WL 43221, at *3.

In this case, Plaintiff has failed to plead the elements
required to state a claim for contributory copyright
infringement.  "Plaintiff bears the burden of establishing
[Bonanza's] knowledge of the infringing activity."  Wolk, 840 F.
Supp. at 751.  In the FAC, Plaintiff alleges that he "provided
Bonanza.com with an Infringement Notice regarding his trademarks
and copyrights that were being infringed."  (FAC ¶ 79.)  This
"attempt to establish knowledge using the notices the Plaintiff
sent is unavailing because . . . 'knowledge,' means 'actual or
constructive knowledge of specific and identifiable
infringements of individual items,' not 'a general awareness
that there are infringements.'"  Wolk, 840 F. Supp. at 751
(citation omitted).

There is also no specific allegation that Bonanza and "its
users and account holders," (FAC ¶ 68), "acted in concert to
infringe upon the Plaintiff's rights," Wolk, 840 F. Supp. at
751.  "Instead, the [FAC] suggests that the [Bonanza] website

was, at most, a means for unidentified users of the website to accomplish an infringing activity." Id. Plaintiff "has not provided [specific allegations] to support its claim that," Asia TV USA, Ltd. v. Total Cable USA LLC, No. 16-CV-6873(AJN), 2018 WL 1626165, at *8 (S.D.N.Y. Mar. 29, 2018), Bonanza was "inducing the infringement by continuing to provide hosting services to a website that is engaged in infringing activity against [his]  . . . copyrights," (FAC ¶ 79). Indeed, "[t]here is little [specificity] regarding the role," Asia TV USA, 2018 WL 1626165, at *8, that Bonanza played in the "infringing activity," ((FAC ¶ 79). See also Demetriades, 690 F. Supp. at 293-94 (finding no contributory liability where plaintiff did not establish "substantial involvement" of defendants, in part, because there was no "evidence that the . . . defendants provided the means or facilities for the admitted copying"); cf. Gershwin Publ'g, 443 F.2d at 1163 (holding concert promoter liable as contributory infringer for infringements by artists it was promoting due to promoter's "pervasive participation" in creating an audience for the artists). In addition, Plaintiff has presented no specific allegations suggesting that Bonanza actually "sought to encourage copyright infringement or promoted its service as a means of circumventing copyright." Wolk, 840 F. Supp. at 751.

Therefore, Plaintiff has failed to plead a claim for
contributory copyright infringement against Bonanza.

Accordingly, as Plaintiff has failed to assert that Bonanza
is directly or indirectly liable for copyright infringement
under the Copyright Act, Count IV is dismissed against Bonanza.

### 4. Unjust Enrichment Claim (Count V)

As to Count V, which asserts unjust enrichment, (FAC
¶¶ 383-85), Plaintiff alleges that all "Defendants' actions
constitute unjust enrichment," (id. ¶ 385), because they have
"unjustly retained profits from the sale of clothing goods and
accessories bearing Plaintiff's . . . marks," (id. ¶ 384).  In
addition, Plaintiff alleges "actual confusion" that "Plaintiff
has already experienced . . . in connection with this matter
. . . as to the affiliation or connection between the Defendants
and Plaintiff [has] result[ed] in the unjust enrichment of
Defendants by using Plaintiff's registered trademarks and
copyrights." (Id. ¶ 1; see also id. ¶ 369 ("Defendants have
unfairly profited from the actions alleged herein and will
continue to unfairly profit and become unjustly enriched unless
and until such conduct is enjoined by this Court."); id. ¶ 374
("Defendants hasve [sic] infringed and continues to infringe on
Plaintiff's common law rights in [his] . . . marks and

Defendants have become unjustly enriched by such acts of infringement.").)[31]

Because these allegations are identical to Plaintiff's allegations of unjust enrichment against the 12(b)(6) Moving Defendants, and because courts evaluate a Rule 12(c) motion under the same standard as a Rule 12(b)(6) motion, see Evans, 2016 WL 1746094, at *1, the Court finds that Plaintiff fails to state claims of unjust enrichment against the 12(c) Moving Defendants for the same reasons it has already found Plaintiff fails to state claims of unjust enrichment against the 12(b)(6) Moving Defendants.[32]  See Section III.A.3, supra.

Accordingly, Count V is dismissed against the 12(c) Moving Defendants.

---

[31] Plaintiff's allegations that the 12(c) Moving Defendants are "inducing the infringement by continuing to provide" either "hosting services" or "online store and hosting services" to websites that are "engaged in infringing activity against" Plaintiff's trademarks and/or copyrights, (id. ¶¶ 79, 301), say nothing of unjust enrichment.

[32] Moreover, for the same reasons the Court found Plaintiff's generalized conclusory allegations lumping all "Defendants" together failed to establish claims for direct trademark infringement against the Online Platform 12(b)(6) Moving Defendants, see footnote 19 in Section III.A.1.i.a, supra, the Court also finds that Plaintiff's generalized conclusory unjust enrichment allegations lumping all "Defendants" together, (see, e.g., FAC ¶¶ 1, 369, 374, 383-85), fail to establish claims of unjust enrichment against the 12(c) Moving Defendants.

## IV. CONCLUSION

For the foregoing reasons, GoDaddy's Motion [dkt. no. 224], Shopify's Motion [dkt. no. 228], Microsoft's Motion [dkt. no. 236], Broihier's Motion [dkt. no. 242], Pixels' Motion [dkt. no. 244], Hostway's Motion [dkt. no. 261], Acquia's Motion [dkt. no. 305], Poshmark's Motion [dkt. no. 333], Levi Strauss' Motion [dkt. no. 336], Express' Motion [dkt. no. 341], Bonanza's Motion [dkt. no. 350], and Sumampow Lopez and LES Strong's Motion [dkt. no. 387] are granted. All claims against the Moving Defendants are dismissed with prejudice.

The Clerk of the Court shall mark this action closed and all pending motions related to the Moving Defendants are denied as moot.

SO ORDERED.

Dated:     New York, New York
           September 30, 2019

           LORETTA A. PRESKA
           Senior United States District Judge